RENDERED: DECEMBER 20, 2007
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2005-SC-000953-MR

JERMAINE A. CHATMAN                                           APPELLANT


ON APPEAL FROM SIMPSON CIRCUIT COURT
V.          HONORABLE WILLIAM R. HARRIS, JUDGE
NO. 04-CR-00153


COMMONWEALTH OF KENTUCKY                                      APPELLEE


**OPINION OF THE COURT BY JUSTICE MINTON**

**AFFIRMING**

After hearing evidence of an undercover drug buy, the jury convicted Jermaine A. Chatman of trafficking in a controlled substance, second offense, and of being a persistent felony offender in the first degree (PFO 1). In accordance with the jury's recommendation, the trial court sentenced Chatman to twelve years' imprisonment for the trafficking in a controlled substance conviction; but that sentence was enhanced to thirty years' imprisonment by virtue of Chatman's status as a PFO 1. Chatman appeals as a matter of right to this Court,[1] raising only arguments related to jury selection. Because we find no error in the manner in which Chatman's jury was selected, we affirm.

---

[1]   See Ky. Const. § 110(2)(b).

## I. THE TRIAL COURT DID NOT ERR WHEN IT STRUCK TWO AFRICAN-AMERICAN JURORS FOR CAUSE.

Two African-American veniremembers raised their hand when the trial court asked in voir dire if anyone considered Chatman to be in their circle of friends. Each one approached the bench to be questioned by the trial court, the Commonwealth's Attorney, and defense counsel. The Commonwealth moved to strike each of them for cause, and the trial court granted each motion. Chatman now contends that the trial court erred when it struck these two prospective jurors for cause. We disagree.[2]

Under Kentucky Rules of Criminal Procedure (RCr) 9.36(1), a prospective juror should be struck for cause if there is "reasonable ground to believe" that the prospective juror "cannot render a fair and impartial verdict on the evidence . . . ." The decision as to whether to strike a prospective juror for cause "lies within the sound discretion of the trial court, and unless the action of the trial court is an abuse of discretion or is clearly erroneous, an appellate court will not reverse the trial court's determination."[3] In order to determine whether the trial court abused its discretion in striking the two prospective jurors at issue, we will examine the situation involving each one separately.

At the bench conference that followed the trial court's question as to whether any member of the venire considered Chatman to be within his or her circle of friends, Juror T stated that he was the pastor of Chatman's aunt's church. Juror T further stated that he had performed plumbing work for Chatman's mother, and he knew Chatman's

---

[2] We note that Chatman, who is African-American, appears to insinuate that there were racial overtones to the striking of these two African-American jurors. Such an insinuation is misplaced. There is nothing in the record to support an inference that the race of the jurors in question had anything to do with their being stricken for cause. This conclusion is reinforced by the fact that Chatman himself successfully moved to strike another African-American member of the venire for cause.

[3] Commonwealth v. Lewis, 903 S.W.2d 524, 527 (Ky. 1995).

2

stepfather. Juror T also stated that it would be hard for him to give Chatman a fair trial. Finally, when the trial court asked Juror T if his relationship with Chatman's family would affect his decision, Juror T responded that it would "to some degree."

Chatman relies upon Juror T's other statement that he did not know Chatman personally and could render a verdict based on the evidence presented. But we have cautioned that "[e]ven where jurors disclaim any bias and state that they can give a defendant a fair trial, conditions may be such that their experience would probably subconsciously affect their decision."[4]

In the case at hand, Juror T had a pastoral and professional relationship with several members of Chatman's family to the degree that he considered Chatman a member of his circle of friends even though he did not personally know Chatman. And Juror T had stated that it would be hard for him to give Chatman a fair trial because his relationship with Chatman's family would be on his mind. So the balance of his answers on voir dire is strikingly inconsistent with Juror T's likely well-meaning assurance that he believed he could render a verdict based solely on the evidence. Accordingly, we do not believe the trial court abused its discretion in granting the Commonwealth's motion to strike Juror T for cause.

Juror S also responded affirmatively when the trial court asked the venire if anyone considered Chatman to be within his or her circle of friends. At the ensuing bench conference, Juror S stated that he had grown up in the same apartment complex as Chatman. Juror S also asked the trial court to be excused because he himself had a pending possession of drug paraphernalia charge (of which he claimed to be innocent).

---

[4]  *Id.*

Juror S asserted that he knew Chatman "like a brother." Moreover, Juror S stated that he would have trouble being impartial. In response to questioning by defense counsel, Juror S stated that he had not socialized with Chatman and that it had been years since he had lived in the same apartment complex as Chatman.

We find that the trial court clearly did not abuse its discretion in excusing Juror S for cause. Juror S stated that he would have trouble being an impartial juror and that he knew Chatman like a brother. Such a close relationship between a potential juror and a defendant clearly demonstrates reasonable ground to find that the potential juror could not have rendered a fair and impartial verdict.

Additionally, we reject Chatman's argument that the trial court did not sufficiently question the jurors to determine if they could be fair and impartial. The trial court conducted a bench conference on the matter in which it quickly ascertained the requisite information and then permitted counsel for Chatman and the Commonwealth to inquire of the jurors as they saw fit. Nothing more is required.

We utterly reject Chatman's specious argument that the trial court erred by failing to ask the so-called "magic question."[5] As we have forcefully written, "[t]here is no 'magic' in the 'magic question.'"[6] Rather, the unfortunately mis-named magic question "is just another question where the answer *may* have some bearing on deciding whether

---

[5] "One of the myths arising from the folklore surrounding jury selection is that a juror who has made answers which would otherwise disqualify him by reason of bias or prejudice may be rehabilitated by being asked whether he can put aside his personal knowledge, his views, or those sentiments and opinions he has already, and decide the case instead based solely on the evidence presented in court and the court's instructions. This has come to be referred to in the vernacular as the 'magic question.'" Montgomery v. Commonwealth, 819 S.W.2d 713, 717 (Ky. 1991).

[6] *Id.* at 718.

4

a particular juror is disqualified by bias or prejudice, from whatever source . . . ."[7] Thus, we cautioned the bench and bar of the Commonwealth that a truly biased juror could not, by virtue of the purportedly magic question, be magically rehabilitated.[8] We again strongly caution the bench and bar of the Commonwealth to remove the term "magic question" from their lexicon.

In the case at hand, the trial court did not err in failing to ask a so-called magic question with an eye toward rehabilitating an un-rehabilitable potential juror. Judges are not required to exhaust all possible questions to a potential juror in the vain hopes of keeping any particular juror on the panel. A trial court's job is to ensure that a defendant is tried by a fair and impartial jury, not to ensure that any particular juror tries a defendant. We find no fault with the trial court's striking Jurors T and S for cause.

## II. THERE IS NO BATSON[9] VIOLATION.

After the defense and Commonwealth had exercised their peremptory challenges, the trial court noted that the Commonwealth had exercised one of its challenges on an African-American member of the venire, Juror C, and asked Chatman's counsel if he desired a race-neutral reason for that strike. Chatman's counsel responded affirmatively. At that point, the Commonwealth stated that two veniremembers had raised their hands when defense counsel asked during voir dire if anyone knew Chatman's mother. The Commonwealth then asked a follow-up question of whether knowing Chatman's mother would influence the veniremembers' ability to be

---

[7]  *Id.*

[8]  *Id.*

[9]  <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

fair and impartial, whereupon one veniremember shook her head in a manner indicating "no," but Juror C did not respond. The Commonwealth also explained that a police officer that it planned to call as a witness in the case had arrested someone for disorderly conduct in the 1970s with the same surname and address as Juror C. The trial judge then found that the Commonwealth's proffered reasons were neutral, and the discussion ended without any further objection or offer of proof by Chatman.

Chatman now argues that the Commonwealth's exercise of a peremptory challenge on Juror C constitutes a Batson violation. We disagree.

The Equal Protection Clause is violated when a juror is struck solely on the basis of race.[10] When a litigant believes that a juror has been impermissibly struck for racial reasons, the complaining litigant's objection is governed by the three-step system the United States Supreme Court set forth in Batson.[11]

Step one required Chatman to make a prima facie showing of purposeful racial discrimination by the Commonwealth in its strike of the African-American juror in question.[12] The Commonwealth was not required to respond to Chatman's challenge unless the trial court found that Chatman had satisfied his burden of making a prima facie showing. However, whether Chatman actually made a sufficient prima facie

---

[10]  Washington v. Commonwealth, 34 S.W.3d 376, 378-79 (Ky. 2000) ("Challenging prospective jurors on the basis of race violates the Equal Protection Clause.").

[11]  *Id.* at 379 ("In Batson, *supra*, the United States Supreme Court outlined a three-step process for evaluating such claims.").

[12]  Washington, 34 S.W.3d at 379; *see also* Gray v. Commonwealth, 203 S.W.3d 679, 690 (Ky. 2006).

6

showing is a moot point since the Commonwealth responded to Chatman's <u>Batson</u> objection.[13] Thus, the parties proceeded to step two of the <u>Batson</u> framework.

Under step two, the burden shifted to the Commonwealth to demonstrate a racially neutral reason for exercising its peremptory challenge.[14] At this step, all that is required is that a prosecutor's articulated reason for exercising a peremptory challenge be racially neutral on its face.[15] As the United States Supreme Court has explained, "[t]he second step of this [<u>Batson</u>] process does not demand an explanation that is persuasive, or even plausible."[16] There is nothing inherently racially oriented about the Commonwealth's proffered reasons—Juror C's failure to respond to a follow-up question regarding his relationship with Chatman's mother and the police officer's earlier arrest of someone sharing Juror C's surname and address. Furthermore, the fact that the Commonwealth did not directly engage in a colloquy with Juror C regarding that arrest or Juror C's failure to respond to a question posed by the Commonwealth before exercising a peremptory challenge upon him in no way negates the facially race-neutral reason given by the Commonwealth for exercising its peremptory challenge. So the proceedings properly moved to step three.

---

[13] <u>Commonwealth v. Snodgrass</u>, 831 S.W.2d 176, 179 (Ky. 1992) ("But since the prosecutor offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate issue of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing also becomes moot.").

[14] <u>Gray</u>, 203 S.W.3d at 690.

[15] <u>Hernandez v. New York</u>, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (plurality opinion) ("At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.").

[16] <u>Purkett v. Elem</u>, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995).

Step three of the <u>Batson</u> framework required the trial court to determine if Chatman had met his burden of proving "purposeful discrimination."[17] In other words, having properly found that the Commonwealth's proffered reason was, on its face, racially neutral, the final step was for the trial court to determine if the Commonwealth's race-neutral reason was actually a pretext for racial discrimination. Because the trial court's decision on this point requires it to take credibility and demeanor of the attorneys into account,[18] the trial court's ultimate decision on a <u>Batson</u> challenge is akin to a finding of fact, which must be afforded great deference by an appellate court.[19]

Chatman's argument that the trial court failed to exercise its own initiative to plumb the depths of the Commonwealth's proffered reasons in order to divine whether the reasons were a mere pretext for racial discrimination ignores the fact that Chatman offered nothing (*i.e.*, no statistical, anecdotal, or historical facts) in response to the Commonwealth's proffered race-neutral reasons for exercising a peremptory challenge on Juror C. So there was nothing on the record from which the trial court could have found that the Commonwealth's proffered reasons were a mere pretext for racial discrimination. Or, in other words, Chatman's silence once the Commonwealth

---

[17] <u>Hernandez</u>, 500 U.S. at 359, 111 S.Ct. at 1866.

[18] *See, e.g., id.,* 500 U.S. at 365, 111 S.Ct. at 1869 ("In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.") (internal quotation marks omitted).

[19] <u>Washington</u>, 34 S.W.3d at 380 ("A trial court's ruling on a <u>Batson</u> challenge will not be disturbed unless clearly erroneous.").

articulated its facially race-neutral reasons for exercising a peremptory challenge on Juror C is fatal to Chatman's Batson claim.[20]

Chatman cannot fault the trial court for failing to find pretext when Chatman himself stood mute instead of attempting to show the alleged pretext underlying the Commonwealth's facially neutral reasons for exercising a peremptory strike on Juror C. Chatman's argument would have the trial court serve as advocate for either the Commonwealth or the defense, rather than serving a trial judge's true role: a neutral, detached magistrate. This is not the duty of the trial judge, and we reject Chatman's argument.

## III. CONCLUSION.

For the foregoing reasons, Jermaine Chatman's convictions and sentence imposed by the Simpson Circuit Court are affirmed.

All sitting. All concur.

---

[20] *See, e.g.,* United States v. Jackson, 347 F.3d 598, 605-06 (6th Cir. 2003) (holding that defendant bears burden to rebut prosecution's stated reasons for exercising peremptory challenges and that if a defendant fails to rebut the facially race-netural reasons offered by the prosecution, an appellate court may review the trial court's decision to deny the Batson objection only for plain error.).

COUNSEL FOR APPELLANT:

Shelly R. Fears
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601-1133


COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General of Kentucky

Kenneth Wayne Riggs
Assistant Attorney General
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601