Ricky N. FRANCE, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2009–SC–000249–MR.

Supreme Court of Kentucky.

Aug. 26, 2010.

Kathleen Kallaher Schmidt, Appeals Branch Manager, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, James Coleman Shackelford, Assistant Attorney General, Office of Criminal Appeals, Attorney General's Office, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Ricky France, appeals as a matter of right [1] from a judgment entered

upon a jury verdict by the Warren Circuit Court convicting him of failure to register as a sex offender and of being a first-degree persistent felony offender (PFO). France received an underlying sentence of three years on the failure to register charge, enhanced to twenty years upon the PFO conviction.

In his appeal, France raises three arguments: (1) that the first-degree PFO conviction was impermissibly based, in part, upon the same 1997 rape conviction (for a 1995 rape) which required him to be a sexual offender registrant; (2) that subjecting France to a statutory revision of the registration statute which occurred following the 1995 rape reclassifying failure to register from a misdemeanor to a felony violates ex post facto principles; and (3) that three African–American jurors were impermissibly struck by the Commonwealth in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).[2] For the reasons set forth below, we reverse the PFO conviction, and remand for a new PFO trial phase.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In September 1980, France committed a rape by forcible compulsion in violation of KRS 510.040. He was convicted of the crime, and on February 27, 1981, final judgment was entered sentencing him to fifteen years in prison.

Following his release on the 1981 conviction, on June 13, 1995, France again committed a rape. On August 7, 1995, he was indicted for the rape, and, among other things, one count of first-degree burglary

and two counts of second-degree burglary. Following a trial, France was convicted of the charges, and final judgment was entered on May 28, 1997. France was sentenced to fifteen years on the rape conviction, ten years on the first-degree burglary conviction, and eight years on each of the two second-degree burglary convictions, with all sentences to run concurrently for a total of fifteen years' imprisonment. France served out the fifteen year sentence on these charges on April 29, 2005, slightly less than ten years after he was originally incarcerated for the charges.[3]

After his release from prison, as a result of the 1997 rape conviction, France was required to register as a sexual offender pursuant to KRS 17.510. France initially registered in Warren County, and reported various subsequent changes in his address. He also complied with required periodic reporting requirements. In June 2008, France's latest registered address was his sister's residence in Bowling Green.

On June 10, 2008, France's then girlfriend, C.B., reported that France had raped and sexually abused her. In the course of their investigation, police determined that France had not been residing at his sister's residence per his sexual offender registration address, but was instead residing with C.B.

On August 6, 2006, France was indicted by the Warren Grand Jury for first-degree rape, first-degree sexual abuse, first-degree failure to comply with the sexual offender registry, and first-degree PFO. As noted, the predicate offense requiring sexual offender registration was the 1997

---

1. Ky. Const. § 110(2)(b).

2. France does not challenge the sufficiency of the evidence to convict him of failure to register.

3. It appears that France was incarcerated while he was awaiting trial, and thus received credit for time served of approximately two years prior to entry of the final judgment.

rape conviction. The predicate offenses supporting the PFO charge were (1) the 1981 rape conviction and (2) the 1997 rape conviction and the three 1997 burglary convictions, collectively considered as one prior offense for PFO purposes.

The trial court granted France's motion to sever the failure to register count from the rape and sexual abuse counts. The failure to register count proceeded to trial first. Following a jury trial France was convicted of failing to register and first-degree PFO. The jury recommended an underlying sentence of three years on the failure to register charge, enhanced to twenty years on the PFO conviction. On April 22, 2007, the trial court entered final judgment in accordance with the jury's verdict and sentencing recommendation. This appeal followed.

## II. THE 1997 RAPE CONVICTION WAS IMPERMISSIBLY USED AS BOTH THE PREDICATE CRIME REQUIRING FRANCE TO REGISTER AS A SEX OFFENDER, AND AS A PREDICATE FOR THE FIRST–DEGREE PFO CONVICTION

■ France's first argument is that his 1997 rape conviction was impermissibly used as both the predicate offense requiring him to register as a sex offender pursuant to KRS 17.510, and as one of the predicate offenses supporting the first-degree PFO conviction. He argues that this is an impermissible double-enhancement based upon a single conviction. For the reasons discussed below, we agree.

In support of his argument, France cites us to *Boulder v. Commonwealth,* 610 S.W.2d 615 (Ky.1980) (overruled on other grounds by *Dale v. Commonwealth,* 715 S.W.2d 227 (Ky.1986)).[4] In *Boulder,* the defendant was convicted of first-degree assault, possession of a handgun by a convicted felon, and of being a second-degree persistent felony offender. Boulder's classification as a convicted felon was based solely upon a 1976 conviction for first-degree assault. Similarly, the sole felony supporting the second-degree PFO enhancement was the 1976 assault.

In finding that the 1976 conviction could not serve as the predicate offense for both the possession of a handgun charge and the second-degree PFO charge, we stated:

First, KRS 527.020 takes into account the fact of a previous conviction in fixing a penalty for a felon in possession of a handgun. *See State v. Ware,* 201 Kan. 563, 442 P.2d 9 (1968). This statute converts non-criminal activity into a criminal offense solely on the basis of a person's status as a felon. Similarly, KRS 532.080 (PFO sentencing) purports to punish a person because of his status as a felon. The utilization of a prior felony to establish an essential element of a crime and then to enhance its punishment is just as illogical as using it to raise a misdemeanor to a felony and then using it to increase punishment by way of KRS 532.080 as disapproved in *Heady v. Commonwealth,* Ky., 597 S.W.2d 613 (1980). Consequently, [Boulder's] status as a felon which establishes the substantive offense of possession of a handgun by a convicted felon may not be used to trigger enhanced punishment via the persistent felony offender statute.

*Id.* at 618.

We are unable to distinguish the double-use of the 1976 assault conviction in *Boul-*

---

4. *See also Jackson v. Commonwealth,* 650 S.W.2d 250, 251 (Ky.1983) (when a single prior felony is utilized to create an offense or enhance a punishment at the trial of the sec-

ond crime so created or enhanced, it may not be used at that trial to prosecute the defendant under KRS 532.080); *Eary v. Commonwealth,* 659 S.W.2d 198 (Ky.1983).

*der* from the double-use of the 1997 rape conviction in the present case. The underlying rationale is the same. The 1976 assault conviction in *Boulder* was the sole basis triggering the defendant's classification as a convicted felon prohibiting him from possessing a handgun; similarly, the 1997 rape conviction was the sole basis triggering France's classification as a sex offender requiring him to register pursuant to KRS 17.510. In both situations an initial crime triggered a legal classification which required the defendant to comply with certain obligations, the violation of which would be a felony.

As the excerpt demonstrates, *Boulder* held that the same underlying felony creating a legal classification subject to specified conditions could not also be used for PFO enhancement purposes in a subsequent felony prosecution for violating a specified condition imposed by the classification. Application of that principle to the present case compels the result that France's 1997 rape conviction, which triggered his sex offender classification and his corresponding obligation to register as a sex offender, may not also be used for PFO enhancement purposes in a prosecution for violation of his obligation to register. The Commonwealth maintains, however, that even if the 1997 rape conviction was impermissibly used for PFO purposes, then, nevertheless, the error was harmless.

As previously noted, in 1997, France received a fifteen-year sentence on the rape conviction, a ten-year sentence on the

first-degree burglary conviction, and two eight-year sentences on the second-degree burglary convictions, with all sentences to run concurrently. He served-out the total concurrent fifteen-year sentence on April 29, 2005. For one of the 1997 felony convictions (besides the rape) to be used for PFO enhancement, the serve-out on that felony must have occurred within five years of the commission of the present felony. KRS 532.080(3)(c)(1). France committed his present crime on June 10, 2008, and thus for one of the other 1997 felony convictions to be used against him for PFO purposes, the serve-out of that felony must have been after June 10, 2003. April 29, 2005 falls well within this range.

■ The Commonwealth argues that even if the rape conviction is factored out, nevertheless, at minimum, the 1997 first-degree burglary conviction would still support a PFO conviction,[5] because it was served concurrently with the rape conviction, and, "as a matter of law,"[6] the serve-out date on that conviction was April 29, 2005, the same as the rape. The Commonwealth contends, therefore, that inclusion of the rape conviction was harmless, because the jury could have found that the serve-out on the burglary was within five years of the failure to register charge. For the reasons stated below, we are not persuaded by the Commonwealth's position.

■ Pursuant to KRS 532.080(3)(c)(1), to convict France of first-degree PFO the Commonwealth was required to prove that he "[c]ompleted service of the sentence

---

5. In addition to the rape, the 1997 first-degree burglary conviction (ten-year sentence) and two second-degree burglary convictions (eight-year sentences) were also included in the PFO instruction.

6. In response, France cites us to KRS 197.045(1), which provides that "[a]ny person convicted and sentenced to a state penal institution may receive a credit on his sentence of

not exceeding ten (10) days for each month served, except as otherwise provided in this section, to be determined by the department from the conduct of the prisoner." Because of the effect of good-time credits on the serve-out of a sentence, France contends that it cannot be determined upon the present record when the serve-out on the burglary convictions occurred.

imposed on any of the previous felony convictions within five (5) years prior to the date of the commission of the felony for which he now stands convicted." It is only required that completion of service of sentence or discharge from probation or parole on any, not each, of the prior convictions shall have occurred within five years of the instant offense. *Howard v. Commonwealth,* 608 S.W.2d 62, 64 (Ky. App.1980).

While reasonable inferences such as performing simple subtraction to calculate defendant's age at the time he committed a prior offense is not prohibited when a jury must decide whether a defendant is a persistent felony offender, *Maxie v. Commonwealth,* 82 S.W.3d 860, 864 (Ky. 2002), here, because there was no specific testimony upon the issue, the jury would be left to speculate on when the serve-out on any of the three other 1997 burglary convictions occurred. *See Lienhart v. Commonwealth,* 953 S.W.2d 70, 71 (Ky. 1997) ("We cannot conclude, given the applicable statutes and case law, that the date of final discharge determines either the date of [the] commencement or completion of a concurrent sentence which is for a shorter period of time than the original sentence.") We are unpersuaded by the Commonwealth's argument that KRS 532.120(1)(a) compels the result that the sentences on the other three felonies were completed at the same time as the completion of the rape sentence. There is no testimony in the record to support that claim, and France did not have the opportunity to defend against it at trial.

"[A]n erroneous jury instruction is presumed to be prejudicial; and a party claiming such an error to be harmless bears the heavy burden of showing that no prejudice resulted from it." *Sanders v. Commonwealth,* 301 S.W.3d 497, 499 (Ky. 2010) (Use of defendant's prior conviction for possession of drug paraphernalia, second offense, as predicate offense to convict him of being a first-degree persistent felony offender was reversible error, even though there was also evidence of other, usable prior felony convictions). In this instance, the Commonwealth has failed to meet its heavy burden. As in *Sanders,* here, "we cannot presume that the inclusion of the [rape] in the [PFO] instruction made no difference to the jury." *Id.* at 500. We accordingly cannot say with "fair assurance" that the error did not "substantially sway" the jury's PFO verdict. *Winstead v. Commonwealth,* 283 S.W.3d 678, 688–89 (Ky.2009). As such, the error was not harmless.

We therefore vacate the PFO conviction and the corresponding sentencing enhancement, and remand for a new PFO sentencing phase.

### III. NO EX POST FACTO VIOLATION OCCURRED

France next contends that he was improperly subjected to a felony prosecution for failure to register as a sex offender even though when he committed the rape that subjected him to registration (in 1995), failure to register was classified as a misdemeanor. He argues that prosecuting him under the version of the statute in effect when he committed the failure to register offense in 2005, rather than the version in effect when he committed the 1995 rape, violates ex post facto principles. We disagree.

The General Assembly first passed the Sex Offender Registration Act (Act), which is codified at KRS 17.500 *et seq.,* in 1994. *See* 1994 Ky. Acts, Ch. 392, § 6. As originally passed, failure to register or timely report a change of address was classified as a Class A misdemeanor. This was the classification in effect at the time France committed the 1995 rape. In 2000, KRS

17.510 was amended to make failure to register or timely report a change of address a Class D felony. 2000 Ky. Acts Ch. 401, § 16(11) and (12). This was the classification in effect at the time France violated the statute in June 2008 by failing to properly register his address.

In *Hyatt v. Commonwealth*, 72 S.W.3d 566 (Ky.2002) we first addressed the ex post facto ramifications of the Sex Offender Registration Act. We noted that *Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), sets out a two-pronged test to establish whether a criminal or penal law is ex post facto: "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Hyatt*, 72 S.W.3d at 571.

The 2000 amendment that reclassified failure to register as a Class D felony applied only prospectively, that is, to incidents of failure to register occurring after its effective date. The amendment had no retrospective effect, and, accordingly, the first prong of the *Weaver* test is not met. When France committed his failure to register offense in June 2008, the amended penalty had been in effect for almost eight years. As such, there was no ex post facto violation.

This reasoning was more recently clarified in *Buck v. Commonwealth*, 308 S.W.3d 661 (Ky.2010), which reiterated the holding in *Hyatt*:

> In addition, Buck argues that the 2000 amendment, which increased failure to register (first offense) from a Class A misdemeanor to a Class D felony, constitutes *ex post facto* punishment when applied to him. We cannot agree. "Any potential punishment arising from the violation of [SORA] is totally prospective and is not punishment for past criminal behavior." *Hyatt*, 72 S.W.3d at 572. *See also* [*Smith v. Doe*, 538 U.S. 84, 101–

02, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ("A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense.").] While a sex offender's past conduct is the reason he or she is required to register, the failure to register occurs in the present. An increase in the degree of the offense for failing to register would only present an *ex post facto* issue if the *act of failing to register* occurred prior to the effective date of the amendment.

*Id.* at 667; *Cf. Commonwealth v. Baker*, 295 S.W.3d 437, 442 (Ky.2009) (retroactive application of the 2006 sex offender residency restrictions violated the Ex Post Facto Clause of the United States Constitution and the Kentucky Constitution).

In summary, application of the 2000 amendments to the Sex Offender Registration Act to France's 2008 violation of its registration requirements does not violate ex post facto principles.

## IV. NO BATSON VIOLATION OCCURRED

France next contends that the trial court erred in overruling his objection pursuant to *Batson*, 476 U.S. 79, 106 S.Ct. 1712, to three of the Commonwealth's peremptory challenges. In using its peremptory strikes, the Commonwealth struck the remaining three African–American members of the venire. France is African–American. Following arguments, the trial court held that the strikes were for a race-neutral reason.

In *Batson*, the United States Supreme Court prohibited deliberate racial discrimination during jury selection. Under *Batson*, we have explained,

[a] three-prong inquiry aids in determining whether a prosecutor's use of peremptory strikes violated the equal protection clause. Initially, discrimination may be inferred from the totality of the relevant facts associated with a prosecutor's conduct during a defendant's trial. The second prong requires a prosecutor to offer a neutral explanation for challenging those jurors in the protected class. Finally, the trial court must assess the plausibility of the prosecutor's explanations in light of all relevant evidence and determine whether the proffered reasons are legitimate or simply pretextual for discrimination against the targeted class.

*McPherson v. Commonwealth*, 171 S.W.3d 1, 3 (Ky.2005) (citations and footnotes omitted).

■ The trial court's ultimate decision on a *Batson* challenge "is akin to a finding of fact, which must be afforded great deference by an appellate court." *Chatman v. Commonwealth*, 241 S.W.3d 799, 804 (Ky.2007) (citation omitted). "Deference," of course, does not mean that the appellate court is powerless to provide independent review, *Miller–El v. Dretke*, 545 U.S. 231, 240, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005) (holding that the trial court's finding of non-discrimination was erroneous in light of clear and convincing evidence to the contrary), but the ultimate burden of showing unlawful discrimination rests with the challenger. *Rodgers v. Commonwealth*, 285 S.W.3d 740, 757–758 (Ky.2009). "A trial court's ruling on a *Batson* challenge will not be disturbed unless clearly erroneous." *Washington v. Commonwealth*, 34 S.W.3d 376, 380 (Ky. 2000).

We identify the three stricken venire persons were Juror A, Juror B, and Juror C. We consider the *Batson* challenges to these venire persons in order.

■ *Juror A.* The prosecutor gave as his reasons for striking Juror A as being: (1) that on her juror qualification form she failed to answer a question concerning whether she or a family member had ever been a defendant, witness, or complainant in a civil or criminal case; and (2) the prosecutor ran a check on Juror A and found that she had been a defendant in seven civil suits and had four separate police contacts. The prosecutor stated that he attempted to strike everyone who had multiple police and/or court contacts.

The trial court asked the prosecutor if he had struck any non–African–Americans for the same reason, and he responded that he had struck two others for this reason—one who had a disorderly conduct charge and another who had a driving under the influence and an alcohol intoxication charge.

The trial court determined that there was no *Batson* violation because the prosecutor had used the same rationale to strike non–African–American venire members.

In *Berry v. Commonwealth*, 84 S.W.3d 82, 88–89 (Ky.App.2001), the Court of Appeals held that an African–American potential juror's statement that a family member had been a defendant in a criminal case, and that she had been party to a discrimination lawsuit, was a valid, race-neutral reason for the Commonwealth's peremptory challenge. Here, the venire person herself had been involved in four criminal cases and seven civil lawsuits—far more than at issue in *Berry*. Accordingly, the strike in this case is supported by *Berry*.

France contends that, nevertheless, the prosecutor should have followed-up on his concerns by asking Juror A additional questions. However, we have previously held under similar circumstances that failure to ask such follow-up questions was

not error. *Chatman*, 241 S.W.3d at 804 ("the fact that the Commonwealth did not directly engage in a colloquy with [juror] regarding [a police officer's earlier arrest of someone sharing juror's surname or juror's] failure to respond to a question posed by the Commonwealth before exercising a peremptory challenge upon him in no way negates the facially race-neutral reason given by the Commonwealth for exercising its peremptory challenge."). Because the prosecutor identified a sound race-neutral reason to strike Juror A and, further, struck two white venire members for the same reason, we cannot conclude that the trial court's decision that there was no *Batson* violation was erroneous.

■ *Juror B.* The prosecutor stated that he struck Juror B because she had worked the third-shift the previous night and so had been up all night. He stated that he was concerned that she would be tired and unable to pay attention. He further stated that he did not remember her race when he struck her, and that he struck a non–African–American venire person for the same reason. Because the same rationale had been used to strike a non–African–American member of the venire, the trial court determined that no *Batson* violation had occurred. France contends that there should have been additional follow-up questioning by the prosecutor to address Juror B's level of fatigue and attentiveness after being up all night; however, "[France] cannot fault the trial court for failing to find pretext when [France] himself stood mute instead of attempting to show the alleged pretext underlying the Commonwealth's facially neutral reasons for exercising a peremptory strike" by himself questioning the effects of Chapman's all-night shift. *Chatman*, 241 S.W.3d at 805.

Thus, for reasons similar to those just stated in our discussion concerning venire person Juror A, we cannot conclude that the trial court erred in sustaining the Commonwealth's peremptory strike of Juror B.

■ *Juror C.* During voir dire questioning it was determined that Juror C went to school with France's sister, Waver France, and currently attended church with her. The prosecutor asked Juror C if she would give more weight to Waver's testimony as a result of their relationship, and she appears to have responded "no."

During the voir dire proceedings, Waver told the bailiff "that someone on the jury panel knows her brother and knows all about the case" but would not identify the venire person. France's counsel stated that he asked Waver about this, and she said that she had posed a hypothetical question to the bailiff and would rather not say why she posed the question.

The prosecutor gave the following reasons for striking Juror C: (1) that she knew Waver, (2) that she had gone to school with her, (3) that she currently went to church with her, and (4) that she suspected that Waver may have been referring to Juror C in her comment to the bailiff. The prosecutor stated that he did not know if the strike was good or bad for the Commonwealth because Juror C had given statements favorable to the Commonwealth, but that he did not want to take a chance on the situation.

In *Commonwealth v. Snodgrass*, 831 S.W.2d 176 (Ky.1992), we held that there is no due process or equal protection violation by a prosecutor in peremptorily striking an African–American juror who lived nearby or in the same neighborhood as the defendant, and whose family knew the defendant's family. *Id.* at 178–179. As prior classmates and fellow church ·members, there was a close relationship between Juror C and Waver. As such, the trial court

did not err in overruling the challenge as a proper race-neutral reason. *Id.*

 Though not argued to the trial court, France now for the first time points out that two other venire panelists were acquainted with persons on the witness list. Thus, our review is pursuant to the palpable error standard contained in RCr 10.26.

The first venire panelist stated that she was acquainted with the listed probation and parole officer—a non-fact witness. The other said that her husband was a retired police officer and, through his work, she knew listed witness Officer Mike Lemons. Neither had a continuing acquaintanceship with the potential witnesses.

Aside from the fact that France failed to make this disparate treatment argument to the trial court, which, as explained, was disapproved in *Chatman,* the scope and quality of the relationships are distinguishable. Juror C had a long-term and continuing relationship with Waver, who was a crucial fact witness in the case. France had registered as living at his sister's residence, and thus her testimony was central to the proceeding. On the other hand, the two other venire persons' relationships were more remote and the witnesses far less central to the case. Thus, even if the issue had been raised, Juror C was not similarly situated with the other two venire persons, and the trial court's sustaining of the strike would have been proper. As such, we conclude that palpable error did not occur. *Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky.2006) (palpable error is that which creates the "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law.").

In summary, the trial court properly upheld the Commonwealth's strikes, and there was no *Batson* violation.

## V. CONCLUSION

For the foregoing reasons, the judgment of the Jefferson Circuit Court as it relates to PFO sentencing is reversed, and the case is remanded for additional proceedings consistent with this opinion. All other aspects of the case are affirmed.

All sitting. All concur.