RENDERED: MAY 10, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0431-MR

TERRELL HARRIS                        APPELLANT

v.             APPEAL FROM KENTON CIRCUIT COURT
HONORABLE KATHLEEN LAPE, JUDGE
ACTION NO. 22-CR-00381

COMMONWEALTH OF KENTUCKY           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: COMBS, LAMBERT, AND McNEILL, JUDGES.

LAMBERT, JUDGE: Terrell Harris appeals from a judgment of the Kenton

Circuit Court sentencing him to ten years' imprisonment pursuant to a jury verdict

finding him guilty of tampering with a prisoner monitoring device and being a

persistent felony offender. We affirm.

       Harris was on home incarceration when he was arrested on an

outstanding warrant. Harris was not wearing his ankle monitor when processed at

the Kenton County Detention Center ("the Jail"), so he was indicted for tampering with a prisoner device and being a persistent felony offender.

At trial, the Commonwealth used a peremptory challenge to strike an African American member of the venire. Harris's counsel raised a *Batson* challenge.[1] The Commonwealth responded that it struck the juror because its complaining witness, Jail employee Sgt. Werner Stilt, recognized that juror's name. At first, the Commonwealth stated that Sgt. Stilt had said the juror shared a name with a former Jail employee. The Commonwealth stated it did not realize the juror was the lone African American on the panel and was not sure the juror was the same person who was formerly employed at the Jail. Defense counsel noted that the juror had not responded when the venire was asked if any of its members knew Sgt. Stilt.

After taking a recess, the court began to announce its decision. But the Commonwealth interjected to repeat, erroneously, that Sgt. Stilt had said the juror shared a name with a former Jail employee. A second prosecutor then suggested that Sgt. Stilt be examined. The trial court then briefly examined Sgt.

---

[1] A *Batson challenge* is defined as "[a]n objection that an opposing party has used a peremptory challenge to exclude a potential juror on the basis of race, ethnicity, or sex. It is named for *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712 (1986), a criminal case in which the prosecution struck potential jurors on the basis of race." BLACK'S LAW DICTIONARY (11th ed. 2019) (defining *Batson challenge* as a specialized term within the broader definition of *challenge*).

Stilt under oath, and he clarified that the juror shared a name with a former Jail inmate, not a former Jail employee. Sgt. Stilt also told the court that the juror had stared at him (Sgt. Stilt) during *voir dire*, but Sgt. Stilt was nonetheless unsure if the juror was the former inmate because Sgt. Stilt had a poor recall of faces. Neither the parties nor the court questioned the juror.

Eventually, the trial court denied Harris's *Batson* challenge. The court found that Harris had made a *prima facie* case of discrimination and the Commonwealth had presented a racially neutral reason for striking the juror. The court ultimately denied the *Batson* challenge. The judge stated that the prosecutors involved appeared frequently before her, but the judge had "never seen" those attorneys engage in racial discrimination.

The trial resumed, and a jury found Harris guilty of tampering with a prisoner monitoring device and of being a persistent felony offender. After being sentenced in accordance with the jury's recommendation, Harris filed this appeal.

The sole question before us is whether the trial court improperly denied Harris's *Batson* challenge. "The Equal Protection Clause is violated when a juror is struck solely on the basis of race. When a litigant believes that a juror has been impermissibly struck for racial reasons, the complaining litigant's objection is governed by the three-step system the United States Supreme Court set forth in

*Batson.*" *Chatman v. Commonwealth*, 241 S.W.3d 799, 803 (Ky. 2007) (footnotes and citations omitted). That three-step process is:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Roe v. Commonwealth*, 493 S.W.3d 814, 826-27 (Ky. 2015). Since ruling on a *Batson* challenge "requires" the trial court "to take [the] credibility and demeanor of the attorneys into account, the trial court's ultimate decision on a *Batson* challenge is akin to a finding of fact, which must be afforded great deference by an appellate court." *Chatman*, 241 S.W.3d at 804 (footnotes and citations omitted).

Despite the Commonwealth's arguments to the contrary, Harris satisfied step one by pointing out that the Commonwealth used a peremptory challenge on the sole African American member of the venire panel. In any event, step one was rendered moot when the Commonwealth offered a reason for striking the juror. *Chatman*, 241 S.W.3d at 803 ("However, whether Chatman actually made a sufficient prima facie showing is a moot point since the Commonwealth responded to Chatman's *Batson* objection."). We thus turn to step two, which required the Commonwealth to posit a "racially neutral reason for exercising its peremptory challenge." *Id.*

Step two "sets a fairly low bar for the Commonwealth to meet[,]" *Mash v. Commonwealth*, 376 S.W.3d 548, 555 (Ky. 2012), because "all that is required is that a prosecutor's articulated reason for exercising a peremptory challenge be racially neutral on its face. As the United States Supreme Court has explained, '[t]he second step of this [*Batson*] process does not demand an explanation that is persuasive, or even plausible.'" *Chatman*, 241 S.W.3d at 803-04 (footnotes and citations omitted) (quoting *Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834 (1995)). As the trial court correctly held, the Commonwealth's proffered reason(s) are racially neutral on their face as race is unrelated to a person being either a former Jail inmate or employee. The juror's alleged demeanor (*i.e.*, staring at Sgt. Stilt) is also racially neutral. *Thomas v. Commonwealth*, 153 S.W.3d 772, 778 (Ky. 2004).

Thus, as is typical, the crux becomes whether Harris "met his burden of proving purposeful discrimination." *Chatman*, 241 S.W.3d at 804 (internal quotation marks, footnote, and citations omitted). The third step requires the trial court "to determine whether it believes the prosecutor's reasons." *Thomas*, 153 S.W.3d at 778. We must defer to the trial court's credibility evaluation absent "exceptional circumstances . . . ." *Mash*, 376 S.W.3d at 556 (citations omitted).

We agree with Harris that the Commonwealth's initial proffered reason was factually incorrect since Sgt. Stilt believed the juror might have been a

former Jail inmate, not a former jail employee. However, that initial misstatement – which was clarified by the trial court's questioning of Sgt. Stilt – is not determinative and does not entitle Harris to relief. There is no indication the Commonwealth's initial statement was based on anything other than the prosecutors having misunderstood or misheard Sgt. Stilt's comments. Harris has pointed to *nothing* showing the Commonwealth acted with malice or an intent to intentionally mislead the court by stating that the strike was used because the juror potentially worked at the Jail instead of having potentially been an inmate. In fact, the Commonwealth suggested the court question Sgt. Stilt. Plus, despite Harris's contention to the contrary, the Commonwealth was permitted to base the strike upon information it received from sources outside the formal *voir dire* process (*i.e.*, from Sgt. Stilt). *See, e.g.*, *Commonwealth v. Snodgrass*, 831 S.W.2d 176, 179 (Ky. 1992) ("*Batson* does not require the neutral explanation for peremptorily striking a potential juror to be derived from voir dire.").

It appears undisputed that the juror did not respond when the trial court told the venire panel that anyone who was currently under indictment or had been convicted of a felony was ineligible to be a juror. Of course, a person may have been an inmate at the Jail without having been convicted of a felony. For example, a person could have been serving time at the Jail after being convicted of

a misdemeanor. Moreover, the Commonwealth asked the venire panel during *voir dire*: "Anybody know Sgt. Stilt?" No one responded.

However, if the venire panel interpreted "knowing" Sgt. Stilt as being personally familiar with him (*i.e.*, as a social acquaintance or friend), a former inmate who only recognized Sgt. Stilt as a Jail employee but had no personal interactions with him could honestly have remained silent. After all, the question was not whether any venire member was familiar with Sgt. Stilt or recognized him. To use an extreme example, everyone recognizes the face of the President of the United States but very, very few people honestly can say they "know" him. Word choices in *voir dire* matter, and the panel was only asked whether they knew Sgt. Stilt, not whether they were at all familiar with him. Moreover, Harris has not indicated where he asked crucial follow-up questions designed to unearth whether any venire member was ever an inmate at the Jail for any reason or recognized any Jail employees. In short, a former Jail inmate not convicted of a felony who thereby recognized Sgt. Stilt could have honestly remained silent in response to the trial court's statement about juror qualifications and the Commonwealth's question about knowing Sgt. Stilt. Thus, the fact that the juror did not respond to those questions is not as inherently determinative as Harris alleges in his briefs.

We also disagree with Harris that the trial court or the Commonwealth had to question the juror. The court could have conducted such an inquiry, which

would have quickly and definitively clarified whether the juror had any prior relationship whatsoever with the Jail or Sgt. Stilt, but no such inquiry was required. As our Supreme Court held: "While we agree with the Court of Appeals that further questioning of [the struck venire member] by the Commonwealth or the trial court might well have reaffirmed the suspicions of the prosecutor, we do not believe that either our Federal or State Constitutions required such inquiry . . . ." *Snodgrass*, 831 S.W.2d at 180. Moreover, Harris has not shown where he asked the trial court to question the juror or to allow the parties to do so.

We reject Harris's argument that the trial judge erred by relying upon her personal history of observing the prosecutors in other cases as a factor in denying Harris's *Batson* challenge. Our Supreme Court has approved a trial court doing just that. *See Mash*, 376 S.W.3d at 557 (listing as a permissible factor to support a trial court's denial of a *Batson* challenge the fact that "the prosecutor had appeared frequently in front of the trial judge, and the judge believed that he had no history or pattern of excluding African Americans from juries.").[2]

---

[2] *Williams v. Commonwealth*, No. 2019-CA-0533-MR, 2020 WL 5868322, at *6 (Ky. App. Oct. 2, 2020), relied upon by Harris, is materially distinguishable. In *Williams*, we criticized Kenton County prosecutors in a robbery case for making "*no remediation efforts whatsoever*" to correct false testimony. *Id.* at *7 (emphasis in original). Harris asserts our criticism of the prosecutors in *Williams* (one of whom, he alleges, is involved in the case at hand) should have played a role in the trial court's evaluation of their credibility here. However, *Williams* affords Harris no relief because – in addition to it being unpublished and thus not binding precedent – it involved a different presiding circuit court judge, and it did not involve any allegations of racial discrimination whatsoever by the prosecutors.

As to the juror allegedly having stared at Sgt. Stilt, "[a]lthough a prosecutor theoretically could fabricate a demeanor-based pretext for a racially-motivated peremptory strike, the third step in *Batson* alleviates this concern by permitting the court to determine whether it believes the prosecutor's reasons." *Thomas*, 153 S.W.3d at 778. Our Supreme Court has stressed that "[g]iven the trial court's unique ability to evaluate the demeanor of both the jurors and the prosecutor, its ruling stands unless clearly erroneous." *Id.*

There is nothing inherently nefarious or suspicious about a prospective juror looking at the Commonwealth's chief complaining witness. After all, Sgt. Stilt would not have noticed the alleged staring by the juror if Sgt. Stilt had not also been looking at the juror. The video of the proceedings does not focus on the jury venire and so we cannot ascertain the juror's demeanor. But the trial court could have observed the juror's demeanor, and Harris has not shown clear error by the trial court in that regard.

The juror's alleged demeanor, standing alone, perhaps would not have been sufficient to overcome Harris's *Batson* challenge.[3] However, the Commonwealth also relied on the juror perhaps having been an inmate at the Jail.

_____

[3] Our Supreme Court has synthesized this area of the law in Kentucky as follows: "This Court has upheld demeanor-based strikes under *Batson* when: (1) additional reasons were given in conjunction with the demeanor-based reasons, or (2) the demeanor-based reason was expounded upon with specificity . . . . However, we have consistently found *Batson* violations when only the appearance or demeanor of a perspective juror is the given reason." *Sifuentes v. Commonwealth*, No. 2016-SC-000485-MR, 2018 WL 898228, at *4 (Ky. Feb. 15, 2018) (citing

Despite his contention to the contrary, Harris has shown no obvious pretext by the Commonwealth. Harris has not shown error in the Commonwealth's statement that it did not realize the juror was African American at the time it struck him. Perhaps another judge would have disbelieved the Commonwealth on that point, but Harris has not shown the trial court here was required to do so. The trial court was permitted to place whatever weight it deemed proper on the Commonwealth's incorrect statement that Sgt. Stilt wondered if the juror was a former Jail employee, in light of the juror remaining silent when asked in *voir dire* if any venire member knew Sgt. Stilt and Sgt. Stilt's later clarification that he was unsure if the juror was a former inmate at the Jail.

The upshot is that "the issue turns solely on the prosecutor's credibility and the judge's opportunity to personally observe the demeanor of both the prosecutor and the jurors. As such, there is nothing in the record upon which to base a finding of clear error." *Thomas*, 153 S.W.3d at 778. Perhaps another judge would have assessed the situation differently, but Harris has not shown clear error in the trial court's evaluation of the matter or application of the *Batson* factors.

We have considered the parties' briefs but deem any argument raised in them not discussed here to be irrelevant, redundant, or otherwise without merit.

cases). As it is unpublished, we cite *Sifuentes* solely as a concise summary of this aspect of Kentucky law, not as binding precedent.

For the foregoing reasons, the Kenton Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Robert C. Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky