34 S.W.3d 376 (2000)
Toma WASHINGTON, Appellant,
v.
COMMONWEALTH of Kentucky, Appellee.
No. 1998-SC-0883-MR.
Supreme Court of Kentucky.
November 22, 2000.
Case Ordered Published by Supreme Court November 22, 2000.
*377 Richard Hoffman, Assistant Public Advocate, Department of Public Advocacy, Frankfort, for appellant.
A.B. Chandler III, Attorney General, Perry T. Ryan, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, for appellee.
GRAVES, Justice
On December 15, 1997, a Franklin County grand jury indicted Appellant, Toma Washington, on one count of capital murder, one count of robbery in the first-degree, and one count of being a persistent felony offender in the second degree. The charges stemmed from a shooting which occurred on December 3, 1997, following a fight in South Frankfort between a friend of Appellant's, Ben Child, and Rodney Williams. Evidently, when the fight was over, Appellant approached Williams and fatally shot him once in the chest. On May 12, 1998, Appellant was convicted of capital murder and sentenced to life imprisonment.
On appeal, Appellant alleges six errors warrant reversal of his conviction: (1) a Batson violation; (2) an improper Allen charge; (3) failure to grant a new trial due to improper juror separation; (4) an improper allotment of peremptory challenges; (5) failure to grant a directed verdict; and (6) injection of a false issue.

I. BATSON CHALLENGE
The Commonwealth utilized its peremptory challenges to strike the only two African-Americans included in the thirty-one person venire. Prospective juror Keisha Redding was struck because she stated during the voir dire examination that she had recently served on a jury and would be unable to convict anybody else. The Commonwealth's use of a peremptory *378 strike on Ms. Redding was not challenged. However, Appellant claims the Commonwealth's peremptory strike of the other prospective African-American juror, Robert Newberry, violated Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Based on a review of the record, we agree.
The record reveals that following voir dire on the morning of trial, the clerk announced the names of the chosen jurors and the trial court swore in the panel. Immediately thereafter, defense counsel raised a Batson objection to the Commonwealth's striking of Mr. Newberry. The prosecutor responded that the Commonwealth had not struck Mr. Newberry, and the trial court and defense counsel were led to believe that he was eliminated by random draw. The bench conference concluded, and the trial court dismissed the non-selected jurors. Shortly thereafter, the clerk informed the trial judge that the Commonwealth had, in fact, used a peremptory challenge to strike Mr. Newberry. Until he was shown the strike sheet, the prosecutor continued to insist that he did not strike Mr. Newberry.
As a result, the trial court demanded reasons from the Commonwealth to support the peremptory challenge. The prosecutor first claimed Mr. Newberry was struck because of his youth. The trial court rejected this reason since Mr. Newberry was 43 years old. Next, the prosecutor asserted that Mr. Newberry "appeared bored" during voir dire. Again, the trial court rejected the explanation. Finally, the Commonwealth stated that Mr. Newberry had sat on an earlier jury that had returned an acquittal. Interestingly, the Commonwealth suggested that Mr. Newberry be placed back on the panel and the defense given the opportunity to strike any other juror. The trial court refused to accept any of the Commonwealth's "race-neutral" explanations for the peremptory strike of Mr. Newberry, and directed the bailiff to locate the remaining prospective jurors who had been dismissed. Unfortunately, all of the prospective jurors had left the building and could not be located.
The trial court called a recess during which the Commonwealth reiterated the reasons for striking Mr. Newberry. Upon revisiting the matter, the trial court reversed its position stating, "I think juror inattention probably is sufficient reason to excuse the juror. I did observe that he was being somewhat inattentive." Consequently, the trial court overruled Appellant's Batson objection as well as denied the motion for a mistrial.
As a preliminary matter, the Commonwealth argues that the Batson challenge was not timely made and is therefore not preserved for review. We disagree. In Simmons v. Commonwealth, Ky., 746 S.W.2d 393, 398 (1988), cert. denied, 489 U.S. 1059, 109 S.Ct. 1328, 103 L.Ed.2d 596 (1989), we held that a Batson objection which is not raised before the swearing of the jury and the discharge of the remainder of the panel is untimely. However, the circumstances in this case are quite different. The trial court immediately swore the jury after the names were called. Defense counsel raised the objection as soon as was practically possible. Unfortunately, the problem was compounded by the fact that both defense counsel and the trial court believed Mr. Newberry had been eliminated by draw, and as such, excused all remaining jurors. The trial court even noted that the Commonwealth's failure to correctly inform the court of its use of a peremptory strike on Mr. Newberry effectively denied defense counsel the opportunity to make a Batson argument before the remaining jurors were excused. It was not until the clerk notified the trial court that the Commonwealth had, in fact, struck both black jurors that the groundwork was laid for a Batson challenge. Thus, we conclude that the Batson challenge was timely, and will therefore address the merits of the issue.
Challenging prospective jurors on the basis of race violates the Equal *379 Protection Clause. In Batson, supra, the United States Supreme Court outlined a three-step process for evaluating such claims. First, the defendant must make a prima facie showing of racial bias for the peremptory challenge. Second, if the requisite showing has been made, the burden shifts to the Commonwealth to articulate "clear and reasonably specific" race-neutral reasons for its use of a peremptory challenge. "`While the reasons need not rise to the level justifying a challenge for cause,' self-serving explanations based on intuition or disclaimers of discriminatory motive" are insufficient. Stanford v. Commonwealth, Ky., 793 S.W.2d 112, 114 (1990) (quoting Batson, supra, at 98, 106 S.Ct. at 1724.) Finally, the trial court has the duty to evaluate the credibility of the proffered reasons and determine if the defendant has established purposeful discrimination.
[A] judge cannot merely accept the reasons proffered at face value, but must evaluate those reasons as he or she would weigh any disputed fact. In order to permit the questioned challenge, the trial judge must conclude that the proffered reasons are, first, neutral and reasonable, and second, not a pretext. These two requirements are necessary to demonstrate "clear and reasonably specific ... legitimate reasons."
Wright v. State, 586 So.2d 1024, 1028 (Fla.1991) (quoting State v. Slappy, 522 So.2d 18 (Fla.1988), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988)).
Batson was not intended to remove all prosecutorial discretion in peremptory strikes, but rather to eliminate the odious practice of eliminating potential jurors simply because of race.
The most disturbing aspect of this case is the prosecutor's insistence that he did not strike Mr. Newberry. Notably, when he was shown the strike sheet, his immediate response was "Oh my God." Given the prosecutor's initial denial, followed by his obvious surprise at the fact he had struck Mr. Newberry, subsequent explanations for the strike were disingenuous. Certainly age was not a sufficient reason to strike a 43-year-old man. Moreover, we are concerned by the assertion that Mr. Newberry appeared inattentive or bored, in light of the fact that no questions were directed toward him during voir dire. "Although [the prosecutor] is entitled to draw reasonable inferences, we are troubled by such complete reliance on bare hunches drawn from the juror's demeanor." Parker v. State, 219 Ga.App. 361, 464 S.E.2d 910, 912 (1995); see also Wright, supraat 1028. (Factors tending to show that asserted reason for peremptory challenge is either unsupported by the record or pretextual include failure to examine a juror or perfunctory examination.) Even the trial court initially ruled that inattentiveness was insufficient justification for the peremptory challenge. Finally, the Commonwealth's third proffered reason, namely that Mr. Newberry had previously served on a jury that returned an acquittal verdict may have been a sufficient race-neutral explanation. McGinnis v. Commonwealth, Ky., 875 S.W.2d 518 (1994), overruled on other grounds, Elliott v. Commonwealth, Ky., 976 S.W.2d 416 (1998). However, the Commonwealth provided nothing other than a bare assertion during the bench conference, and the trial judge accordingly rejected the reason. The Commonwealth was unable to provide the trial court any details of Mr. Newberry's prior jury service until it filed the Commonwealth's response to the motion for new trial some six weeks later. Had the prosecutor based the peremptory challenge on a legally sufficient reason, it is hard to understand why he was unable to articulate it earlier.
As with the state of mind of a juror, evaluation of the prosecutor's state of mind, as well as the proffered reasons for the peremptory challenge, lies "peculiarly within a trial judge's province." Commonwealth v. Snodgrass, Ky., 831 S.W.2d 176, 179 (1992) (citing Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, *380 114 L.Ed.2d 395 (1991)). A trial court's ruling on a Batson challenge will not be disturbed unless clearly erroneous. Unfortunately, after reviewing the proceedings in this case, we can reach no other conclusion but that the trial court erred in ruling that the Commonwealth proffered sufficient explanations to overcome the Batson challenge. The Commonwealth's strike of Mr. Newberry was, at best, inadvertent, and at worst, based on something other than a race-neutral reason. Thus, notwithstanding the fact that the evidence was undoubtedly sufficient to convict Appellant, we are compelled to reverse this case for a new trial because of the prosecutor's failure to follow the Batson rule in exercising peremptory challenges.

II.
As the peremptory challenge issue is dispositive, we decline to address all other issues. We have reviewed Appellant's remaining enumerations of error and find that they either lack merit or are unlikely to recur at trial.
The judgment and sentence of the Franklin Circuit Court are reversed, and this matter is remanded for a new trial.
LAMBERT, C.J., COOPER, GRAVES, JOHNSTONE, and STUMBO, JJ., concur.
KELLER, J., dissents in a separate opinion in which WINTERSHEIMER, J., joins.
KELLER, Justice, dissenting.
The majority appears to have forgotten Commonwealth v. Snodgrass,[1] where this Court indicated that it would give great deference to a trial court's findings of fact regarding the validity of a prosecutor's stated race-neutral reasons for exercising a peremptory challenge to remove an African-American juror:
The sole determination by the trial court when it holds a Batson hearing is whether the prosecutor exercised a peremptory challenge on a venireman because of his race. Batson gives great deference to the trial court in determining whether the prosecutor's strike is racially motivated. A trial court should give appropriate weight to the disparate impact of the prosecutor's criterion in its decision, but this factor is not conclusive in the preliminary race-neutral inquiry. The trial court may accept at face value the explanation given by the prosecutor depending upon the demeanor and credibility of the prosecutor. No additional inquiry or evidentiary hearing is required under Batson.

There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercised the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies "peculiarly within a trial judge's province."

...
"Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."
...

[T]he trial court's finding on the question of discriminatory intent is a question of historical fact and is not to be set aside unless shown to be clearly erroneous.[2]
In this case, the prosecution articulated more than one legitimate, race-neutral basis for his peremptory challenge, and the trial court accepted oneNewberry's apparent disinterest[3] in the proceedingsand determined that the prosecution had *381 not exercised its peremptory challenges in an unconstitutional manner. The majority in this case reverses Washington's convictions, finds the trial court's findings clearly erroneous, and implicitly finds that the only conclusion possible from the record is that the prosecution's explanation was a pretextual justification for deliberate race-based exclusion. The majority's holding also implies that the highly respected trial judge presiding over the case made findings in order to support a pretextual justification for the prosecution's race-based exclusion of a juror. I find the majority opinion an inappropriate substitution of this Court's judgment for that of the factfinder, and I dissent from the majority opinion because I believe the record clearly supports the trial court's findings.
After the trial court gave the jury its oath, defense counsel asked to approach the bench, and noted that neither of the two (2) African-Americans originally on the jury panel were seated on the jury. The prosecution explained that it had exercised a peremptory challenge to exclude a female African-American juror, and gave legitimate, race-neutral explanations for its challenge which the defense did not dispute. Counsel and the trial court then incorrectly suggested that the other African-American on the jury panel, Newberry, had been removed by lot:

 Comm.: There was another fellow...
 Defense: Newberry.
 Court: We must have drawn his name.
 Comm.: Mr. Newberry? We did not strike Mr. Newberry.
 Court: His name was drawn by lot.
 Comm.: O.K.
 Defense: O.K., thank you.

The trial court's bench clerk then advised the judge that the Commonwealth had exercised a peremptory challenge to remove Newberry, and the trial court asked counsel to confer at the bench:

 Court: Could I see counsel here at the bench again?
 [To Commonwealth] Janice tells me that you
 struck Newberry. His name was not drawn.
 Comm.: I didn't strike Newberry. [Walks to clerk's bench and apparently
 reviews his strike sheet]
 Court: Ohhhhh ... God.[4]
 Comm.: [Off-camera by clerk] I didn't think I struck
 Newberry, but I can't argue with the record.
 [At bench] I struck Mr. Newberry because of
 his youth. Also, he was ... actually I didn't
 even realize that he was a black fellow, but I
 struck him because of his youth. Also, he
 indicated that he was, ah, he did not appear to
 be following voir dire He appeared bored by
 the entire process. He reacted negatively on a
 couple of occasions [inaudible, although it
 appears counsel attempted to indicate
 Newberry's location in the room during the voir
 dire process.] Late 20's, early 30's, indicated
 boredom, indicated lack of interest in voir dire
 process and indicated some distaste for some
 of the questions. So, we struck him for those
 peremptory reasons.
 Defense: I would object to ...
 Court: That's not good enough.
 Comm.: Your Honor, the fact is that is those are the
 reasons.
 Court: I'm saying that's not good enough. Why didn't
 you speak up and tell me when I
 assumedyou said you did strike one of them
 and I said the other one must have
 drawnyou should have confirmed it right
 then?
 Comm.: Oh, O.K., [defense counsel] also struck
 because ... let me get you my notes just to
 make sure, alright? [Goes off camera, returns]
 He was struck, additionally, because he served
 on a jury panel in a prior case that resulted in
 an acquittal.
 Court: That's not good enough.
 Comm.: Your Honor, I wouldn't care if you put him back
 on and draw somebody else off.
 Court: [To bailiff] Would you see if the jury has left?
 [To counsel] Oh, this is infuriating, I don't know
 how we can do this. This is infuriating to me.
 Comm.: I have the case. He was on this Pam
 Cummins case, and that's the reason we
 struck him.
 Court: That's not ... just because he was on a jury
 that found somebody not guilty is not good
 enough.
 Bailiff: [Off-camera] They're already gone out of the
 building.
 Court: Let's let them go to lunch and we will discuss
 what to do.

The parties returned to the bench after the trial court dismissed the jury for lunch, and, after the parties argued the topic, the trial court found that the prosecution struck Newberry for a permissible, race-neutral reason:

 Court: Okay, what are we going to do?
 Comm.: [Inaudible, brief]
 Court: Here's the problem. [To slowly departing
 jurors] Would you all step out of the courtroom? We
 need to

*382
 discuss a matter here, on the record.
 [To counsel] When I asked about the reason
 for his dismissal I came to believe immediately
 that he was one of the names that we drew
 out, that is not the case, and no one corrected
 me. The reasons you have defined for mewell
 go ahead and define your reasons.
 Comm.: I've already [inaudiblecounsel appears to
 read from a treatise][5] ... put this man back on
 this jury, I'll make no objection, and you can
 [inaudible].
 Defense: [Inaudible]
 Court: Well, I think there probably is sufficient reason
 to excuse the juror. I did observe that he was
 being somewhat inattentive. My upset is that I
 mistakenly believed that his name was one of
 those drawn and nobody corrected me and Mr.
 McDaniel had no opportunity to make his
 argument before the young man was excused.
 This should have been corrected.
 Defense: I don't believe the reasons given are [inaudible]
 and I would certainly object.
 Comm.: The primary reason again [inaudible]
 ...
 Comm.: The fact of the matter is [inaudible] I went
 through at the end [inaudible] 5 or 6 people
 [inaudible]
 Court: [To defense counsel] What is your response to
 Mr. Cleveland's arguments about the reasons
 the validity of his reasons for striking Mr.
 Newberry?
 Defense: First of all, if he was struck on youth [inaudible]
 Court: I don't know how old he is
 Counsel for the defense and the Commonwealth
 retrieved juror information sheets from counsel
 tables and returned to the bench.
 Court: [Smiling] Yeah, that's very young, we all know.
 Comm.: No, he does appear young, wouldn't you say?
 Defense: I really don't think that's a legitimate reason.
 [Inaudible.] I know that Mr. Newberry
 [inaudible] I was walking [inaudible]
 Comm.: Regardless of what you may argue that way
 [inaudible]
 Court: I think that's right

Without question, the Commonwealth exercised a peremptory strike which excused Newberry from the jury panel. Whether the Commonwealth did so accidentally[6] or intentionally, and if intentionally, whether the Commonwealth did so for the race-neutral reasons articulated by the prosecution or in a deliberate attempt to exclude Newberry from the panel because of his race is a factual issue to be determined by the trial court. Here, an experienced and highly respected trial judge, who had an opportunity to observe and assess the demeanor and credibility of the prosecuting attorney and who personally observed evidence of Newberry's disinterest, found that the prosecution's stated reasons for striking Newberry were more than pretext for unconstitutional motivations. Today's majority sweeps the trial court's findings to the side and makes its own determinations:
Unfortunately, after viewing the proceedings in this case, we can reach no other conclusion but that the trial court erred in ruling that the Commonwealth proffered sufficient explanations to overcome the Batson challenge. The Commonwealth's strike of Mr. Newberry was, at best, inadvertant, and at worst, based on something other than a race-neutral reason. Thus ... we are compelled to reverse this case for a new trial because of the prosecutor's failure to follow the Batson rule in exercising peremptory challenges.[7]
I note that, although the majority reverses the conviction, it is unwilling to label the trial court's finding's clearly erroneous, and, although its holding requires the majority to have concluded that the record supports only the view that the Commonwealth engaged in unconstitutional, race-based exclusion, the majority dances around its conclusions regarding the Commonwealth's racism by turning to double-speak: *383 "something other than a race-neutral reason."
In Batson, the United States Supreme Court itself expressed the importance of deference to a trial court's determination whether the prosecution's use of peremptory challenges constituted purposeful discrimination:
"[A] finding of intentional discrimination is a finding of fact" entitled to appropriate deference by a reviewing court. Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.[8]
Today's majority fails to pay even lip service to this deference, and engages in its own factfinding mission independent of our role as a reviewing Court. The prosecutor in this case stated that he struck Newberry because of the potential juror's inattentiveness. The trial court stated that he, too, observed Newberry's inattentiveness, and found the Commonwealth's explanation sufficient. Although the majority opinion focuses on what it refers to as the Commonwealth's disingenuous explanations, we must remember that "[t]he sole determination by the trial court when it holds a Batson hearing is whether the prosecutor exercised a peremptory challenge on a venireman because of his race."[9] I believe the trial court sits in a far better position to make this decision than this Court, and I see nothing clearly erroneous about the trial court's findings in this case. In fact, I find them clearly supported by the record.
I would affirm Washington's convictions.
WINTERSHEIMER, J., joins this dissent.
NOTES
[1] Ky., 831 S.W.2d 176 (1992).
[2] Id. at 179-180 (citations omitted).
[3] See Stanford v. Commonwealth, Ky., 793 S.W.2d 112, 114 (1990); United States v. Rodrequez, 859 F.2d 1321 (8th Cir.1988); United States v. Roberts, 913 F.2d 211 (5th Cir.1990).
[4] Although the majority opinion attributes this exclamation to the Commonwealth, I believe, based on the recording volume and the voice itself, that it came from the trial judge.
[5] Large portions of this discussion are inaudible apparently as a result of the failure to "lock-in" the microphone located at the bench or a malfunction of the recording equipment. Although counsel for both the Commonwealth and the defense can be seen speaking and gesticulating, no audio is available for the majority of the last portion of the argument regarding Newberry's removal.
[6] I note that an accidental use of a peremptory challenge to exclude a minority member of a jury panel would not be unconstitutional because Batson only concerns "purposeful" acts of discrimination through abuse of peremptory challenges. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
[7] Majority Opinion at 379-80.
[8] Batson v. Kentucky, supra note 6 at 476 U.S. 79, 98 n. 26b, 106 S.Ct. 1712, n. 26b, 90 L.Ed.2d 69, 89 n. 21 (citations omitted).
[9] Commonwealth v. Snodgrass, supra note 1 at 179.