# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 14, 2019
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-000186-MR

RODNEY WEINEL      APPELLANT

ON APPEAL FROM CAMPBELL CIRCUIT COURT
V.      HONORABLE DANIEL ZALLA, JUDGE
NO. 16-CR-00867

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Rodney Weinel appeals his convictions of first-degree burglary and of being a first-degree persistent felony offender which resulted in his being sentenced to life in prison.

Weinel contends that the trial court erred by (1) denying his *Batson* challenge; and (2) by denying his request for an instruction on the lesser included offense of third-degree burglary.

Having reviewed the record, we conclude the Commonwealth did not violate *Batson v. Kentucky*, 476 U.S. 79 (1986), because the Commonwealth articulated a race-neutral reason for the peremptory strike of the juror. We further hold that Weinel was not entitled to an instruction on the lesser included offense of third-degree burglary. We accordingly affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Rebekah Osterhage was watching television at home when she noticed movements at the front door. Rebekah went to the door and saw Weinel attempting to look into the residence. When Rebekah opened the door, Weinel stepped off the porch and walked quickly around the side of the house. Rebekah called her husband Steven, and then called 911. As she spoke to the dispatcher she observed Weinel walk toward a tree line at the rear of the residence.

Police responded and began searching the tree line area. During their search police found a blue duffel bag labeled with the name of the company Steven worked for and a red duffel bag. Inside the red bag were various tools and several boxes of ammunition. The blue duffel bag contained tools and a battery charger. Near these items the police found a backpack containing several full bottles of alcohol, a box containing various tools, three bows, and several arrows. Also located nearby was a loaded muzzle-loader firearm. Closer to the house, police found several fishing poles, an additional bow and several arrows, a gun scope, a welding tool, and racks of frozen ribs taken from the Osterhages' garage freezer. Steven identified all of the items as belonging to the family and having come from the Osterhages' detached garage.

Police eventually located Weinel hiding in the tree line near the residence. Police also found a vehicle with Ohio tags parked nearby which belonged to Weinel's girlfriend. Weinel had the keys to the vehicle in his pocket. Weinel initially refused to comply with police commands. When

apprehended Weinel had in his possession a ball cap belonging to Steven Osterhage which was kept in the garage. Rebekah identified Weinel as the person she had seen at the door peering into her residence. Police later determined that Weinel lived on the other side of the tree line from the Osterhages.

Following a jury trial, Weinel was convicted of first-degree burglary, of being a first-degree persistent felony offender, and was sentenced to life in prison. This appeal followed.

## II. THE COMMONWEALTH'S PEREMPTORY STRIKE DID NOT VIOLATE BATSON

Weinel contends that the trial court erred by denying his *Batson* challenge to the Commonwealth's peremptory strike of Juror 433, the lone African American on the jury panel. For the reasons stated below, we disagree.

During *voir dire,* the Judge explained the juror qualifications to the prospective jurors with one requirement being that the jurors live in Campbell County. Five prospective jurors indicated that they had served on a jury during the last twenty-four months. The trial court gave each of these individuals the option of being excused if they chose, but all chose to remain on the venire. Also, a minister informed the court that he ministered at several of the local jails and indicated that he had a conflict of interest and was excused for cause. It was at that point, the juror in question, Juror 433, raised her hand. The following colloquy between Juror 433 and the trial court occurred:

3

**Juror 433:** So, three days out of the week I do live down there, but the other four I live in Boone County – or the other three I live in Boone County.

**Court:** So, what are you telling the court, ma'am?

**Juror 433:** OK, I don't know if I live . . . I'm like . . .

**Court:** Oh, you're determining your residency of Campbell County?

**Juror 433:** Yeah, because I'm here four days out of the week, because I go to school in Boone County, so it's kind of easier for me to travel to Cincinnati, than Boone County, so I just stay down here four days out of the week.

**Court:** What is your residence address? Is it Campbell County?

**Juror 433:** Yeah.

**Court:** And do you, are you a registered voter in the county?

**Juror 433:** Yes.

**Court:** But you think you might not be a resident of the county?

**Juror 433:** Well, I don't know.

**Court:** So, what is your intent, do you receive mail in the county?

**Juror 433:** Yes. So, even though I still live in Boone, I'm, like, a resident of Campbell County.

**Court:** Well, if you vote here, and you live here, and your domicile's here, that is . . . do you consider Campbell County your county of residence?

**Juror 433:** Yes.

4

**Court:** And you do vote in Campbell County, even though you might reside a few days a week somewhere else?

**Juror 433:** Right.

**Court:** OK, if you fill out an official form for the government or the county, would you use your Campbell County address?

**Juror 433:** Correct.

**Court:** OK, then the court will determine that you are a Campbell County resident for the purpose of this jury pool.

The trial court did not dismiss Juror 433 for non-residency, finding that the juror was a Campbell County resident. At the conclusion of *voir dire* the Commonwealth exercised one of its peremptory strikes against Juror 433. Weinel challenged the strike under *Batson v. Kentucky*.[1] The Commonwealth justified the strike as follows:

> I don't know how that [a race-based strike] can be inferred when there's only one African-American juror on the whole jury. . . . This was the individual who wasn't even sure if this was her county of residence; she was not even clear if she is a Campbell County resident; she spends half her time out of the county.
>
> For preservation of the record, I do not want an issue on appeal that a person who was not a Campbell County resident ended up serving on a jury . . . so in an abundance of caution, I did strike [Juror 433] based on her confusion about her residency.

The trial court responded that it had questioned the juror about the circumstances of her residency and determined that she was a Campbell County resident. Defense Counsel agreed with the trial court and argued that

---

[1] Weinel is white and Juror 433 is African American.

5

her residency had been determined by the trial court, and therefore no remaining issue existed concerning her residency. The trial court then recessed the proceedings to further research the issue.

After completing its research, the trial court reconvened the proceedings and asked the Commonwealth to again state its race neutral reason for the strike. The Commonwealth responded:

> I think she was still equivocal about where she resides, I think she wasn't even confident that she was a county resident and should be serving on a jury—that made me uncomfortable. Beyond that, I think her attitude generally, I just got the vibe that she didn't want to be here and I didn't think she would be a good juror.

In addition to reiterating its initial reason, the Commonwealth cited to a second reason for the strike. Namely, a "vibe" based on Juror 433's attitude which the prosecutor interpreted to mean that the juror did not want to serve, based on the statements to the Court which indicated she might not live in Campbell County. Defense counsel responded that Juror 433 was the sole African American juror on the panel, was a resident of the county, and that she voted in the county. Therefore, she should have been retained on panel. The trial court responded that "that doesn't entitle her to serve on the jury," and that the Commonwealth was entitled to strike her if it was unsure of her residency. The trial court accordingly denied Weinel's *Batson* challenge.

In *Batson*, the United States Supreme Court prohibited deliberate racial discrimination during jury selection. The Supreme Court set forth a three-step process for trial courts to follow to determine whether a peremptory challenge was improperly based on race. *Id.* at 97–98. First, the defendant must make a

6

prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination. *Id.* *See also Snyder v. Louisiana*, 552 U.S. 472, 476–477 (2008); *Miller–El v. Dretke*, 545 U.S. 231, 277 (2005) (Thomas, J., dissenting); *Miller–El v. Cockrell*, 537 U.S. 322, 328–329 (2003); *McPherson v. Commonwealth*, 171 S.W.3d 1, 3 (Ky. 2005); *Johnson v. Commonwealth*, 450 S.W.3d 696, 702 (Ky. 2014).[2]

"[T]he trial court's ultimate decision on a *Batson* challenge is akin to a finding of fact, which must be afforded great deference by an appellate court." *Chatman v. Commonwealth*, 241 S.W.3d 799, 804 (Ky. 2007). "'Deference,' of course, does not mean that the appellate court is powerless to provide independent review.'" *Dretke*, 545 U.S. at 240 (holding that the trial court's finding of non-discrimination was erroneous in light of clear and convincing evidence to the contrary). "But the ultimate burden of showing unlawful discrimination rests with the challenger." *Rodgers v. Commonwealth*, 285 S.W.3d 740, 757–58 (Ky. 2009). "A trial court's ruling on a *Batson* challenge will not be disturbed unless clearly erroneous." *Washington v. Commonwealth*, 34 S.W.3d 376, 380 (Ky. 2000); *Johnson*, 450 S.W.3d at 702.

---

[2] Abrogated in part by *Roe v. Commonwealth*, 493 S.W.3d 814, 828 (Ky. 2015).

We agree with the trial court's finding that Juror 433's weekly stays in Boone County for the convenience of attending school did not affect her Campbell County residence. *Edwards v. Logan*, 24 Ky.L.Rptr. 1099 (Ky. 1902) ("a voter's residence is where his habitation is, and to which, when absent, he has an intention of returning, and he shall not lose his residence by absence for temporary purposes; a resident of a county does not lose his residence therein by going to Indiana to work, with an intention of returning, where he in fact returned to the county within a few months, and was living there when the election occurred."); *Combs v. Combs*, 301 Ky. 463, 470, 192 S.W.2d 395, 398, (1946) ("To hold that anyone employed at [Oak Ridge] for as much or even more than a year or two (requiring the establishment of a temporary home) would transfer that person's residence, would be unthinkable. It is entirely clear from the facts in this case that the parties never intended to, nor did, abandon their residence").

*U.S. ex rel. Garibaldi v. Orleans Parish School Bd.*, states that "*Batson* does not prohibit peremptory challenges based on residency in a particular county or city, unless the peremptory challenges are a proxy for race." 46 F.Supp.2d 546, 557 (E.D.La. 1999). In this case, even though Juror 433 remained a resident of Campbell County despite her weekly absences for school purposes, her residency was called into question. KRS[3] 29A.080(2) provides:

> "A prospective juror is disqualified to serve on a jury if the juror: (a) Is under eighteen (18) years of age; (b) Is not a citizen of the United States; (c) *Is not a resident of the county*; (d) Has insufficient

---

[3] Kentucky Revised Statute.

8

knowledge of the English language; (e) Has been previously convicted of a felony and has not been pardoned or received a restoration of civil rights by the Governor or other authorized person of the jurisdiction in which the person was convicted; (f) Is presently under indictment[.]"

(emphasis added).

Unquestionably, a concern that a juror is not legally eligible to serve on the panel is a race-neutral reason for a peremptory strike. In light of the trial court's finding on the issue, and because Weinel himself sought to retain Juror 433 on the jury, it is unlikely that if Juror 433 had served on the jury that the verdict would have been overturned based upon a later determination by an appellate court that she was not a Campbell County resident. However, the concern was legitimate, and a mistake in fact or of judgment in making a peremptory strike does not equate to purposeful discrimination. *Aleman v. Uribe*, 723 F.3d 976, 982 (9th Cir. 2013) ("To determine if a prosecutor's mistake undermines his or her credibility, we must consider whether, based on the facts of the case, the mistake indicates purposeful discrimination instead of innocent error. See *Mitleider v. Hall*, 391 F.3d 1039, 1049 (9th Cir. 2004) ("*Batson* is not violated by prosecutor's honest, but mistaken belief as long as it is not pretextual. After all, *Batson* prohibits purposeful discrimination, not honest, unintentional mistakes. See *Batson*, 476 U.S. at 98").

The trial court's finding that the Commonwealth's use of a peremptory strike against Juror 433 was not related to racial animus is supported by substantial evidence, and its decision was therefore not clearly erroneous. *Washington*, 34 S.W.3d 380

9

("A trial court's ruling on a *Batson* challenge will not be disturbed unless clearly erroneous[]").[4]

### III. WEINEL WAS NOT ENTITLED TO A THIRD-DEGREE BURGLARY INSTRUCTION

Weinel also contends that the trial court erred by denying his request for a third-degree burglary instruction as a lesser-included offense to the first-degree burglary charge.

RCr[5] 9.54(1) states,

> It shall be the duty of the court to instruct the jury in writing on the law of the case, which instructions shall be read to the jury prior to the closing summations of counsel. These requirements may not be waived except by agreement of both the defense and the prosecution.

This "rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony.'" *Gribbins v. Commonwealth*, 483 S.W.3d 370, 373 (Ky. 2016) (quoting *Taylor v. Commonwealth*, 995 S.W.2d 355 (Ky. 1999)). While an instruction on a lesser included offense is required if the evidence would support a jury's belief beyond a reasonable doubt as to the defendant's guilt,[6] such an instruction is not

---

[4] "Findings of fact are not clearly erroneous if they are supported by substantial evidence." *Commonwealth v. Jennings*, 490 S.W.3d 339, 346 (Ky. 2016) (citing *Simpson v. Commonwealth*, 474 S.W.3d 544, 546–547 (Ky.2015)). Substantial evidence means evidence that when "taken alone or in light of all the evidence ... has sufficient probative value to induce conviction in the minds of reasonable men." *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted); *Commonwealth v. Abukar*, 497 S.W.3d 231, 237 (Ky. 2016).

[5] Kentucky Rule of Criminal Procedure.

[6] *Swan v. Commonwealth*, 384 S.W.3d 77, 99 (Ky. 2012).

10

required where the evidence does not support the instruction. *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998).

The first-degree burglary statute, KRS 511.020, provides in relevant part:

> (1) A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime:
>
> (a) Is armed with . . . a deadly weapon; . . .

The third-degree burglary statute, KRS 511.040, provides as follows:

> (1) A person is guilty of burglary in the third degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building.[7]

As relevant here, the difference between the two crimes is that first-degree burglary requires that the defendant be in possession of a deadly weapon at some stage in the commission of the crime, whereas the third-degree burglary statute does not.

It is well-established that the deadly weapon element of KRS 511.020 is satisfied if the defendant steals a firearm during the course of the burglary. *Riley v. Commonwealth*, 91 S.W.3d 560, 563 (Ky. 2002) ("[o]ne who steals a deadly weapon during the course of a burglary is armed within the meaning of KRS 511.020."); *Wilson v. Commonwealth*, 438 S.W.3d 345, 354 (Ky. 2014) ("[a]

---

[7] A "building," for the purposes of the burglary statutes, is a building in its ordinary sense plus "any structure, vehicle, watercraft or aircraft: (a) Where any person lives, or (b) Where people assemble for [various] purposes...." KRS 511.010(1). It is uncontested that an unattached garage qualifies as a "building" under this definition.

11

person may become 'armed with a deadly weapon' for the purposes of first-degree burglary when he enters a building or dwelling unarmed and subsequently steals a firearm therein." (quoting *Hayes v. Commonwealth*, 698 S.W.2d 827, 830 (Ky. 1985)); *Conyers v. Commonwealth*, 530 S.W.3d 413, 421 (Ky. 2017). Nor must the Commonwealth prove that a firearm was capable of firing for the firearm to qualify as a deadly weapon. *Conyers* at 421.

We review a trial court's decision concerning whether to give a jury instruction under the abuse of discretion standard. *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015). A trial court abuses its discretion when its decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Here, the items stolen from the Osterhages' detached garage included a muzzle-loader firearm and four bows with several arrows. Weinel suggests that, because the only item from the burglary found on his person was a hat, the jury could have believed that he only stole the hat, and someone else committed a burglary at about the same time and left the other items stashed about the area. We are persuaded that the trial court did not abuse its discretion in ruling that no reasonable juror could have made this finding, and thus hold there was no reason for the lesser included instruction.

## IV. CONCLUSION

For the foregoing reasons the judgment of the Campbell Circuit Court is affirmed.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, J.J.; sitting. All concur.

COUNSEL FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate, Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear,
Attorney General of Kentucky

Mark Barry,
Assistant Attorney General of Kentucky