# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D),  THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE  ACTION.

RENDERED: JANUARY 18, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2022-SC-0227-MR

ISMAIL ALI      APPELLANT

V.

ON APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE BRIAN C. EDWARDS, JUDGE
NOS. 19-CR-002741, 21-CR-000630 & 21-CR-000806

COMMONWEALTH OF KENTUCKY      APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

A Jefferson Circuit jury found Ismail Ali guilty of assault in the second degree, convicted felon in possession of a handgun, wanton endangerment in the first degree, complicity to wanton endangerment in the first degree, and being a persistent felony offender in the second degree. The jury recommended a sentence of thirty years, but the trial court imposed a sentence of twenty years pursuant to KRS[1] 532.110(1)(c). Ali appeals as matter of right[2] claiming the trial court erred when it admitted evidence that Ali was on HIP[3] and overruled several *Batson* challenges from the defendant. Upon review, this

---

[1] Kentucky Revised Statutes.

[2] Ky. Const. § 110(2)(b).

[3] Home Incarceration Program.

Court finds the trial court did not abuse its discretion by admitting the KRE 404(b) evidence. Nor do we find that the trial court erred when it permitted the Commonwealth to strike several jurors finding no violation of *Batson v. Kentucky,* 476 U.S. 79 (1986). Therefore, the judgment of the Jefferson Circuit Court is affirmed.

## I.  FACTS AND PROCEDURAL HISTORY

Jacqueline Long lived on Rowan Street with her boyfriend and her two-year-old daughter, J.P. On September 26, 2019, Long was at home with her daughter, while her boyfriend was at work. She noticed that there was a group of people sitting outside on a milkcrate and recognized one of them as Ali. Long recognized Ali because he once lived near her mother. Long noticed he was wearing a white tank top and described him as tall and heavy set. She recognized a few others in the group but did not know their names.

Long became concerned because she knew that this group of individuals fought a lot, so she called her boyfriend's mother who agreed to come over. As she was standing by her front door waiting for her boyfriend's mother to arrive, she heard gunshots and J.P. started to scream.  She noticed there was blood on J.P.'s stomach from a stray bullet, so she called an ambulance. As Long retreated from the front door she heard additional shots.

She testified that Ali was shooting from one end of her truck which was parked directly in front of her house. Someone else down the street was shooting also but she was not able to identify him. Once the police and EMS[4]

---

[4] Emergency Medical Services.

arrived they took Long and J.P. to the hospital via ambulance. J.P. underwent some minor surgery to clean the wound and was able to recover.

Detective Anthony Summerall was the lead detective on the case. He interviewed Ali about the incident. Ali told Detective Summerall that he went to Rowan Street to protect his sister but denied possessing a gun or hurting anyone. He claimed he was only trying to stop the fight. Ali admitted that he was wearing a white tank top t-shirt. Ali was indicted on assault in the first-degree, wanton endangerment in the first-degree, possession of a handgun by a convicted felon, complicity to wanton endangerment in the first-degree, and being a persistent felony offender in the second degree.[5]

On January 6, 2020, prior to trial, the Commonwealth provided notice under KRE[6] 404(c) that it intended to introduce evidence obtained from Ali's participation in the HIP program under KRE 404(b). Specifically, the Commonwealth sought to introduce evidence of his location from his GPS ankle monitor that showed Ali was there on Rowan Street at the time of the shooting. The Commonwealth disavowed any intention to introduce evidence regarding when or why Ali was placed on HIP. On February 9, 2022, Ali filed a motion to exclude the HIP location data. The trial court ruled in favor of the Commonwealth but forbade any mention of why Ali was on the HIP program.

---

[5] These charges were initially filed in three separate indictments. The Commonwealth filed a motion to consolidate for trial, which the trial court granted.

[6] Kentucky Rules of Evidence.

During jury selection, the Commonwealth exercised preemptory challenges on three of the remaining five black jurors. Ali challenged the Commonwealth's strikes under *Batson.* The trial court considered this objection and inquired of the Commonwealth whether there was a race-neutral reason for its preemptory strikes. The Commonwealth offered several reasons which the trial court accepted. Further facts will be adduced as necessary, so we now address the merits of the appeal.

## II.    ANALYSIS

As noted above, Ali argues that the trial court erred when it allowed the Commonwealth to admit testimony regarding the GPS data obtained through Ali's participation of the HIP program. Ali claims that this evidence should have been excluded under KRE 404(b), and by admitting it, the trial court deprived Ali of the right to a fair trial.

Evidentiary rulings by the trial court are reviewed for abuse of discretion. *Anderson v. Commonwealth,* 231 S.W.3d 117, 119 (Ky. 2007). The test for abuse of discretion is whether the trial court's ruling was arbitrary, unfair, unreasonable or unsupported by sound legal principles. *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

Ali argues that under our precedent the GPS data obtained through his participation in the HIP program is not relevant, had minimal probative value, was unduly prejudicial, and unnecessarily cumulative. KRE 404(b) states:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

4

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or

(2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

Although the trial court admitted this evidence under KRE 404(b)(1) in order to prove Ali's identity and his opportunity to commit the offense, we believe it is more appropriate to analyze this issue under KRE 404(b)(2). As an appellate court, we may affirm a lower court ruling for any reason supported by the record. *Commonwealth v. Mitchell*, 610 S.W.3d 263, 271 (Ky. 2020). Therefore, we will look to see if Ali's status on HIP is inextricably intertwined with the GPS data and whether it was possible to exclude the data without a serious adverse effect on the offering party.

KRE 404(b)(2) allows the prosecution to "present a complete, unfragmented picture of the crime and investigation." *Adkins v. Commonwealth*, 96 S.W.3d 779, 793 (Ky. 2003) (citing Robert G. Lawson, *Kentucky Evidence Law Handbook* § 2.25 at 96 (3d ed. Michie 1993)). In *Webb v. Commonwealth,* 387 S.W.3d 319, 326 (Ky. 2012), we held that:

> One of the accepted bases for the admissibility of evidence of other crimes arises when such evidence "furnishes part of the context of the crime" or is necessary to a "full presentation" of the case, or is so intimately connected with and explanatory of the crime charged against the defendant and is so much a part of the setting of the case and its "environment" that its proof is appropriate in order "to complete the story of the crime on trial by proving its immediate context or the 'res gestae' " or "the uncharged offense is 'so linked together in point of time and circumstances with the crime charged

5

that one cannot be fully shown without proving the other....' [and is thus] part of the res gestae of the crime charged."

*Id.* (citing *United States v. Masters,* 622 F.2d 83, 86 (4th Cir. 1980)). This Court has affirmed a trial court's admission of evidence that showed there were two outstanding warrants of arrest for the defendant in *Kerr v. Commonwealth,* 400 S.W.3d 250, 254 (Ky. 2013). We held this admissible under KRE 404(b)(2) because:

> [T]he existence of the arrest warrants was inextricably intertwined with the police surveillance of the Pinehurst Lodge and with Kerr's initial arrest. "KRE 404(b)(2) allows the Commonwealth to present a complete, unfragmented picture of the crime and investigation[.]"

*Id.* (quoting *Adkins v. Commonwealth,* 96 S.W.3d 779, 793 (Ky. 2003)). In a case with very similar facts to the present one, the Commonwealth cites an unpublished case from the Court of Appeals upholding the trial court's decision to allow GPS data from the defendant's participation in a HIP program. *Gay v. Commonwealth,* No. 2014-CA-001247-MR, 2015 WL 5781272 (Ky. App. Oct. 2, 2015). The Court of Appeals reasoned that:

> The question for our consideration, then, is whether the evidence of Gay's ankle monitor was offered from some purpose other than proving prior bad acts, and/or was inextricably intertwined with admissible evidence. We must answer this question in the affirmative. The record demonstrates that the evidence at issue was not tendered for the direct or indirect purpose of proving that Gay had engaged in prior bad acts. Rather, the testimony was offered for the sole purpose of demonstrating that Gay was present at Kloiber's residence at the time Kloiber was allegedly robbed. The ankle monitor contained a GPS tracking device, and this device was used to bolster the Commonwealth's assertion that Gay was present at Kloiber's house when the crime was committed.

6

*Id.* at *2. We find this reasoning persuasive. Ali's location during the shooting was an important fact the Commonwealth needed to prove beyond a reasonable doubt in order to convict Ali.

Of course, as this Court held in *Ordway v. Commonwealth,* when deciding on the admissibility on KRE 404(b)(2) evidence, even if it is otherwise admissible, trial courts should undertake a KRE 403 analysis. 391 S.W.3d 762, 791 (Ky. 2013). KRE 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

KRE 403 does not, however, "offer protection against evidence that is merely prejudicial in the sense that it is detrimental to a party's case." *Webb,* 387 S.W.3d at 326 (citing *Carter v. Hewitt,* 617 F.2d 961, 972 (3d Cir.1980); *Brazos River Auth. v. GE Ionics, Inc.,* 469 F.3d 416, 427 (5th Cir.2006)).

One fact that neither party mentions in their briefs is that Ali stipulated to being a convicted felon, a vital element in the charge of convicted felon in possession of a handgun. It is extremely difficult to imagine that the jury would attach that much significance to Ali being on HIP in light of Ali's status as an admitted felon. Given that context, the probative value of Ali's location is not outweighed by the prejudicial import of his HIP status.

Additionally, Ali argues that since he admitted that he was present during the police interview, his admission rendered the GPS data superfluous. At trial, the Commonwealth played surveillance video from Long's residence in

7

addition to video captured on a cell phone of the incident. Both Long and Detective Summerall identified Ali for the jury, but upon review of the record, neither video is visible. So, Ali's argument that the GPS data was unnecessarily cumulative under *Hall v. Commonwealth* is impossible for this Court to evaluate. 468 S.W.3d 814, 824 (Ky. 2015).

As such, we cannot accept Ali's argument that the Commonwealth must discard its most reliable evidence at trial because it corroborates other testimony. Therefore, we conclude that the trial court did not abuse its discretion when it allowed the introduction of this evidence.

Ali also contends that evidence pertaining to his HIP status violates this Court's prohibition of shackling defendants or displaying defendants wearing "badges of custody" at trial. *Deal v. Commonwealth,* 607 S.W.3d 652, 667 (Ky. 2020). However, *Deal* is inapplicable here. *Deal* prohibits visual displays of custody *at trial* that could lead a jury to conclude that some official determination has been made as to the defendant's guilt or innocence. "One accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." *Id.* at 659 (quoting *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986)). Here, Ali's HIP status was incidental and unavoidable due to the Commonwealth's legitimate need to present the whole facts of its case. Here, there were no visual reminders of Ali's custodial status at trial and the trial court was careful not to allow any evidence of why Ali was on HIP.

**Ali's Batson Challenges.**

Ali's final argument is that the trial court erred when it allowed the Commonwealth to use its preemptory strikes to eliminate three black jurors claiming a violation of *Batson v. Kentucky,* 476 U.S. 79 (1986). In *Batson,* the United States Supreme Court held that it was a violation of the equal protection clause of the Fourteenth Amendment for a "prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Id.* at 89. When evaluating claims under *Batson,* this Court must determine whether:

> First, the defendant must make a prima facie showing of racial bias for the peremptory challenge. Second, if the requisite showing has been made, the burden shifts to the Commonwealth to articulate "clear and reasonably specific" race-neutral reasons for its use of a peremptory challenge. . . . Finally, the trial court has the duty to evaluate the credibility of the proffered reasons and determine if the defendant has established purposeful discrimination.

*Washington v. Commonwealth,* 34 S.W.3d 376, 379 (Ky. 2000). A trial court's determination on *Batson* challenges will not be overturned on appeal unless they are clearly erroneous. *Id.* at 380.

After Ali successfully made a prima facie challenge to the Commonwealth's preemptory strikes against three of the remaining five black members of the panel, the burden shifted to the Commonwealth to present "clear and reasonably race neutral reasons" for its challenges. Under *Gray v. Commonwealth,* this Court has held that "[u]nless a discriminatory intent is

9

inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral." 203 S.W.3d 679, 691 (Ky. 2006) (quoting *Hernandez v. New York,* 500 U.S. 352, 360 (1991)). But a

> judge cannot merely accept the reasons proffered at face value, but must evaluate those reasons as he or she would weigh any disputed fact. In order to permit the questioned challenge, the trial judge must conclude that the proffered reasons are, first, neutral and reasonable, and second, not a pretext. These two requirements are necessary to demonstrate "clear and reasonably specific. . . . legitimate reasons."

*Washington,* 34 S.W.3d at 379 (quoting *Wright v. State,* 586 So.2d 1024, 1028 (Fla. 1991)).

Once the Commonwealth offers its race-neutral explanation for the strikes, the trial court is tasked with evaluating the credibility of the proffered explanations and determines whether the defendant has shown purposeful discrimination. Some of the factors the trial court should consider are "side-by-side comparisons of black prospective jurors who were struck and white prospective jurors who were not struck in the case" and if a prosecutor misrepresents "the record when defending the strikes during the *Batson* hearing[.]" *Flowers v. Mississippi,* 139 S. Ct. 2228, 2243 (2019).

Here, Ali asserts that the Commonwealth misrepresented the record defending the strikes against prospective jurors 2904582 and 2904619. Hence, Ali claims the trial court's decision to accept the Commonwealth's explanation was clearly erroneous and should be grounds for reversal.

10

**Juror 2904582**

The reason the Commonwealth gave for striking Juror 2904582 was the juror's response during voir dire to a question the defense posed to the panel. Ali asked what rights are important to people and "what else is in the Bill of Rights, what are other important rights that we think about a lot?" Juror 2904582 responded with "the right to bear arms." When the trial court pressed the Commonwealth on why it struck this particular juror, the Commonwealth stated that he "responded to the question about constitutional things by offering up that he believed in the right to bear arms under the Second Amendment." And that since one of the charges Ali faced was being a convicted felon in possession of a handgun the Commonwealth expressed concern that people that have strong views on the Second Amendment "don't even believe it should be a crime."

Ali claims the Commonwealth mischaracterized the record when it implied that Juror 2904582 expressed that he personally thought that the Second Amendment was important to him, instead of people generally. While it is true that the juror did not say "the right to bear arms is important to me personally," we believe it is a reasonable inference the Commonwealth could make and therefore cannot conclude that the trial court's decision was clearly erroneous.

11

**Juror 2904619**

Ali also claims that the Commonwealth mischaracterized the record pertaining to the questioning of this juror. During voir dire Ali asked, "do police always get it right?" The following colloquy occurred.

> **Juror:** I mean, people make mistakes.
>
> **Defense Counsel:** Okay
>
> **Juror:** And if it's dark outside, people's features can look different. And I think sometimes people get convicted of the wrong crime. You know, if they wasn't there, or if see—if something might look different than what they really saw.
>
> **Defense Counsel:** Right.
>
> **Juror:** It happen.
>
> **Defense counsel:** And so just because a police might testify this happened or I know this is true, does that mean, does that make it—does that mean that it's true? Because he said it?
>
> **Juror:** Not always.

When pressed by the trial court to offer a race neutral explanation, the Commonwealth quoted the juror's response as "it was common to be misidentified based on race. . . . and I'm sure he was talking about his own race at that time." As noted above, the trial court's determination of a *Batson* challenge is a three-part test. Here at step two, "all that is required is that a prosecutor's articulated reason for exercising a peremptory challenge be race-neutral on its face." *Commonwealth v. Coker,* 241 S.W.3d 305, 307 (Ky. 2007) (citing *Hernandez v. New York,* 500 U.S. 352, 365 (1991)). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason

12

offered will be deemed race-neutral." *Gray v. Commonwealth,* 203 S.W.3d 679, 690–91 (Ky. 2006), (quoting *Hernandez v. New York,* 500 U.S. at 360).

Upon our review of the record, it is extremely difficult to determine what the juror said. In fact, in Appellant's brief he was unable to transcribe the colloquy. It appears that the juror simply expressed a healthy skepticism over the reliability of eye-witness identification. And while the Commonwealth's explanation to the trial court could be said to mischaracterize what the juror stated, it is also within the realm of possibility that this was an honest mistake.

As the Commonwealth pointed out when arguing for its challenges, it also moved to strike a white juror for a similar response to the question "do police always get it right?" The Commonwealth's case relied on eyewitness identification both from lay witnesses and from police officers. Both juror's skepticism toward both forms of evidence are sufficient reasons for the Commonwealth to peremptorily strike them and when the Commonwealth struck both, it gives credence to the Commonwealth's position that this juror was struck, not because the Commonwealth had discriminatory intent, but because the Commonwealth believed the juror would have bias against its case. Here we must remind ourselves of the extremely deferential nature of this Court's review on *Batson* challenges. As we stated in *Gray:*

> Because the trial court is the best "judge" of the Commonwealth's motives in exercising its peremptory strikes, great deference is given to the court's ruling. *See Wells v. Commonwealth,* 892 S.W.2d 299, 303 (Ky.1995) (the trial court is in the "best position" to determine the true intent behind the Commonwealth's peremptory challenges); *Snodgrass,* 831 S.W.2d at 179 (the trial court may "accept at face value" the explanation given by the

13

prosecutor for his strikes, depending on his "demeanor and credibility). The trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference," *Wells,* 892 S.W.2d at 303, and must be accepted unless they are clearly erroneous. *Stanford v. Commonwealth,* 793 S.W.2d 112, 114 (Ky.1990).

*Gray*, 203 S.W.3d at 691. Here the trial court was in the best position to evaluate the juror's statements and the Commonwealth's response to them. While the Commonwealth's response does not appear to be racially neutral because the juror's race was alluded to, the reason it gave was not inherently discriminatory. The Commonwealth struck him because it thought he would be less inclined to believe the testimony of eyewitnesses when they identified Ali as the perpetrator. As such, this Court cannot say that the trial court's findings were clearly erroneous when it allowed the Commonwealth to strike Juror 2904619.

**Juror 2904448**

During voir dire, the Commonwealth asked the panel if anyone close to them had ever been arrested or charged with a crime. Juror 2904448 raised her hand and answered in the affirmative along with four others. This juror stated that her nephew was ultimately convicted of robbery in Jefferson County and was sent to prison. The Commonwealth struck this juror but did not strike the four other white jurors who stated that they had been charged with a crime and some of them convicted. The charged conduct ranged from driving under the influence, disorderly conduct, and walking out of a restaurant without paying. Ali contends this disparate treatment between the white jurors who

14

were not struck[7] and the black juror that was struck is evidence of the discriminatory intent on the part of the Commonwealth. The Commonwealth's explanation was that there is quite a bit of difference between going to prison for a long time, in the case of the juror's nephew, in contrast with the experience of the four others whose charges appear to only be misdemeanors. We agree that a juror's brief run-in with the law is a world apart from the experience of a close family member going to prison for a very long time, therefore, we cannot say that the trial court's decision was clearly erroneous.

### III.     CONCLUSION

Based on the foregoing, we hold the Jefferson Circuit Court did not abuse its discretion when it allowed the Commonwealth to introduce the GPS data from Ali's participation in HIP. Also, we hold that the Jefferson Circuit Court's rulings on Ali's *Batson* challenges were not clearly erroneous and therefore must be affirmed.

All sitting. VanMeter, C.J.; Bisig, Conley, Keller, Lambert, and Nickell, JJ., concur. Thompson, J., concurs in result only.

---

[7] Two of these juror's sat on Ali's jury.

COUNSEL FOR APPELLANT:

Jennifer E. Hubbard
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General